IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARLO FALCHINI, Sr., et al.,          :
                    Plaintiff,        :
              v.                      : Case No. 03:12-cv-108-KRG-KAP
UNITED STATES OF AMERICA              :
(Ebensburg Navopsptcen),              :
                    Defendant         :

## Report and Recommendation

### Recommendation

The government has filed a motion for summary judgment,
docket no. 21. Despite the plaintiffs' best efforts to lose their
case by acting as their own attorneys, by not filing a relevant
response to the government's motion, and by attempting to claim
damages that are only available in the Court of Claims and that
have (with no objection from the plaintiffs) already been declared
nonrecoverable, the law requires that the government's motion be
denied in part, as I explain below.

### Report

As the Court recalls from the motion to dismiss stage of
the proceedings, plaintiffs own a parcel of land approximately one
acre in size near the southeast corner of the intersection of U.S.
219 and U.S. 22 in Cambria Township. Because the area is
undergoing some commercial development, plaintiffs have attempted
to sell the land. They have not had success at selling the
property for what they believe it is worth. They assert that the
reason for this is the damage to the value of the land as a result
of occasional stormwater runoff from the United State's adjacent

property, a Naval Reserve Armory. Plaintiffs filed a *pro se* civil complaint under the Federal Tort Claims Act for compensation for damage to their property as a result of stormwater runoff from the Armory, that could be interpreted as stating both a takings claim and a claim for trespass to property.

At the motion to dismiss stage I explained that to the extent plaintiffs intended to state a takings claim they must proceed in the Court of Claims but that to the extent plaintiffs could prove that the Navy's runoff control measures were negligently designed, constructed, or maintained, and caused occasional flooding they could obtain the traditional measure of tort damages for trespass, namely the lesser of the cost of repairs or the diminution of the value of their property. I noted then and note again that the plaintiffs cannot use this Court as a vehicle for trying to unload property the Navy does not want and at a price they could not obtain in the marketplace.

After the discovery period, the government filed a motion for summary judgment asserting one defense, that the plaintiffs' administrative claim was untimely filed. The plaintiffs, who did not file any objection to the dismissal of the takings claim, filed a response that does not respond to the argument made by the government and that makes it clear they either did not understand the ruling in this case that there is no takings claim or hope that by ignoring the ruling they can get the Court to do likewise.

Plaintiffs' Response, docket no. 25, is a collection of documents with no coherence except for an attached paper explaining that plaintiffs want either the property "repaired to sellable condition" plus $125,000 for "taking of land from 1984-2014," or $305,000 for the land (broken down as $180,000 for the "purchase" plus $125,000 for the "past taking"). Let me explain one more time for the plaintiffs: 1) the maximum that plaintiffs could ever recover is limited to the amount they sought in their administrative claim; 2) there is no taking of land at issue in this proceeding; 3) the damages that plaintiffs can receive are limited to the lesser of the provable diminution of value of the land or the cost of remediation; and 4) their lack of cooperation with remediation efforts is relevant to damages.

On the narrow point raised by the government, 28 U.S.C.§ 2401(b) provides that "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." The plaintiffs submitted their administrative claim on November 17, 2009. The plaintiffs do not contest that Carlo Falchini, III, who has been the active plaintiff in this lawsuit, was speaking for all of them when he testified at his deposition that the plaintiffs were aware of the alleged damage from run-off as early as 2005 and were at the same time aware that the cause was

the storm water drainage system installed by the Navy on its property. There is no claim of equitable tolling.

The government recognizes that the continuing violation doctrine is the only theory that would make the plaintiffs' claim timely. The government asserts that the continuing violations theory does not apply here, citing Barnes v. American Tobacco Co., 161 F.3d 127 (3d Cir.1998), Cowell v. Palmer Twp., 263 F.3d 286 (3d Cir.2001), and Muniz-Rivera v. United States, 204 F. Supp. 2d 305 (D.P.R.2002) aff'd, 326 F.3d 8 (1st Cir.2003), in support of its position. None is dispositive because none closely applies to what all the authors of all the reported cases appreciate is a very fact-bound analysis.

Barnes, affirming the grant of summary judgment against the medical monitoring claims of five smokers on the grounds that they should have known long before they filed suit that smoking cigarettes put them at risk of lung disease, distinguished the continuing violation doctrine from the discovery rule. The discovery rule, which applied to the smokers' claims, holds that the limitations period begins to run when a plaintiff knows or should know that he has been injured and that it has been caused by another. Barnes distinguished the D.C. Circuit's description of the continuing violation doctrine in Page v. United States, 729 F.2d 818 (D.C.Cir.1984):

4

Moreover, 'since one should not be allowed to acquire a right to continue the tortious conduct,' it follows logically that statutes of limitations should not run prior to its cessation.

161 F.3d at 154, quoting 729 F.2d at 821-22 (citations omitted). The citations in Page that Barnes omitted and then subsequently distinguished are to Third Circuit precedents construing the FELA, which is an area of law so factually remote from the jurisprudence of torts to real property that it is of limited use to explore further whether Page or Barnes is more analogous to the present case.

In Cowell, the owners of a real estate development company filed suit against a township alleging that the township's recording of liens against their property effected a taking. The Court of Appeals held that no takings claim was even ripe because the plaintiffs had not yet exhausted the state created procedure for obtaining just compensation. Addressing a parallel claim that the imposition of liens constituted a substantive due process violation, the Court of Appeals rejected an argument that the continuing violations doctrine operated to make the plaintiffs' claims timely because the liens were imposed by 1993 and the complaint was filed in 1999, explaining that: 1) the continuing violations doctrine is most frequently applied in federal court in employment discrimination claims; 2) the focus of the doctrine is on the tortious acts of the defendants; and 3) it is the tortious acts that must continue, not ill effects from an original

violation. Cowell clearly involved a single act with continuing consequences, but it is interesting that the Third Circuit distinguished the case before it from United States v. Dickinson, 331 U.S. 745 (1947), a takings claim in which Justice Frankfurter wrote for a unanimous Court that the statute of limitations did **not** begin running on the first flooding of land taken by the government, but only upon the completion of the project. Justice Frankfurter wrote:

When dealing with a problem which arises under such diverse circumstances procedural rigidities should be avoided. All that we are here holding is that when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken.'

331 U.S. at 749. Although Dickinson involved a takings claim, its rationale applies equally well to a trespass claim and is of greater factual similarity to the instant case than Cowell.

In Muniz-Rivera, 108 homeowners in Salinas, Puerto Rico sued the United States, alleging that they suffered damage from the 1996 and 1998 flooding of the Nigua River and from the backflow of their sewage and drainage systems during this flooding. The government's liability was asserted because the government's lending agencies (HUD, FHA, FmHA, and Department of Agriculture) failed to discharge their duties to inspect the plaintiff's properties, or take measures to avert the risk of flooding, or to warn the plaintiffs of the flood risks and of the need for flood

6

insurance. The District Court held that the plaintiffs' FTCA complaint was barred by their untimely filing of their administrative claims. The court reasoned that the alleged tortious conduct of the lenders took place before or when the homes were constructed or purchased, mostly in the 1970s, and that even though plaintiffs may suffer from the effects of this negligence every time flooding occurs, "they do not allege that Government agents committed a series of ongoing violations." Like Cowell, Muniz-Rivera is unmistakably correct, but deals with a set of facts with limited similarity to those in the present case.

The Restatement (Second) of Torts' §899, comment d., contains these two helpful contradictory observations explaining the commencement of the statute of limitations in tort claims affecting real property,:

.... In some cases, however, in which the defendant has done an act that may have a permanent injurious effect, but when the effect is problematical and no harm is observable, the statute does not begin to run until some portion of the harm becomes observable. This is true, for example, when a railroad company builds a bridge that may or may not cause water to flow on the plaintiff's land in times of flood, in which case the statute begins to run from the time of the first flooding, if there is likelihood of recurrent floods.
     In other cases when there is a series of continuing harms the plaintiff, under the rules stated in §161 and §930, has an election to recover or is permitted to recover damages only for harm to the use of the land up to the time of trial. In cases of this type, the statute does not run from the time of the first harm except for the harm then caused. Thus, for example, when there has been the tortious emission of fumes from a factory, the plaintiff is not required to treat the harm as a unit and is entitled to recover for damages for harm that has accrued within the period provided by statute for that type of tort.

7

The reference in the Restatement at Section 899 to Section 930, discussing damages for future invasions, suggests that any suit for damages in this matter should encompass any claims for past or future damages. The reference to Section 161 gives us in comment b, illustration 1:

A, without B's consent or other privilege to do so, erects on his own land a dam which backs up water on B's land. This is a trespass, which continues so long as A maintains his dam in such a way as to flood B's land.

Change "dam" to "stormwater drainage system" and you have the situation between the Falchinis and the Navy in this case.

The key issue here is which paragraph of Section 899 better represents Pennsylvania law, because the FTCA uses state law to resolve questions of substantive liability. See Cannon v. United States, 338 F.3d 1183, 1192 (10th Cir. 2003)(no continuing tort under Utah law for contamination of mining site near Dugway Proving Ground by WWII-era weapons testing), compare Hoery v. United States, 324 F.3d 1220, 1222 (10th Cir. 2003)(continuing tort under Colorado law for contamination of groundwater from waste disposal on grounds of Lowry AFB).

Pennsylvania law, at least since 1991, would hold that injury in the form of occasional flooding that resulted from construction upon a defendant's land that did not immediately cause injury to plaintiff's land, constitutes a continuing trespass rather than a single permanent injury for purposes of

8

the statute of limitations. <u>Graybill v. Providence Twp.</u>, 593 A.2d 1314 (Pa. Cmwlth.1991), <u>aff'd</u>, 533 Pa. 61, 618 A.2d 392 (1993). <u>Compare</u> <u>Warminster Twp. Municipal Authority v. United States</u>, 903 F. Supp. 847, 851 (E.D. Pa.1995) (distinguishing <u>Graybill</u> to find an FTCA claim untimely where township discovered contaminated groundwater in 1979, "permanently abated" it in 1985, and did not file administrative claim until 1994). <u>Graybill</u> remains good law in Pennsylvania on the distinction between torts that are continuing torts and those that are not. <u>See</u> <u>e.g.</u> <u>Lake v. Hankin Group</u>, 79 A.3d 748 (Pa.Cmwlth.2013) (applying Graybill to reverse dismissal on the basis of the statute of limitations), <u>appeal</u> <u>denied</u>, 89 A.3d 1286 (Pa.2014). That dictates denial of the government's motion.

This is not to open the door to plaintiffs' improper attempt to assert a claim for unobtainable damages. If, however, plaintiffs can with competent evidence prove that the Navy's drainage system injured their property for the period from two years prior to the filing of their administrative claim to the present, they should have the opportunity to do so (with damages measured as previously set out at the motions to dismiss stage). As per the Restatement (2d) of Torts §930, the trial should also encompass any claim of future injury by the plaintiffs or any transferees.

If the Court accepts my recommendation, then the parties shall file their pretrial statements within thirty days after the order of the Court. I estimate that this matter should take no more than one day of trial time and recommend that it be set down for nonjury trial in the Summer of 2015.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 16 February 2015

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

    Carlo Falchini, Jr.
    Carlo Falchini, III
    Francis Falchini, Jr.
    Judette Falchini
    834 W. High Street
    Ebensburg, PA 15931